**Chris HERNANDEZ, as administrator of the Estate of Othon Martinez, Plaintiff,**

v.

**AERONAVES DE MEXICO, S.A., a corporation; McDonnell-Douglas Corporation; Victor Manual Origoza Mora, a citizen of Mexico; Mexico, a sovereign state, and Does I through XXX, inclusive, Defendants.**

**Elssie MARTINEZ; Ricardo Lopez Alvarez, Plaintiffs,**

v.

**AERO–MEXICANA, Does I through L, inclusive, Defendants.**

Nos. C–83–5301 RHS, C–83–5429 RHS.

United States District Court,
N.D. California.

March 23, 1984.

F. Michael Breuleux, Tracy N. Tumlin, San Jose, Cal., McGarry Law Offices, Nora Kronenthal, Berkeley, Cal., for plaintiffs.

Patrick D. Bingham, Roderick D. Margo, Condon & Forsyth, Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION

SCHNACKE, District Judge.

### I. *Introduction*

These civil actions arise out of the fatal 1981 crash of an Aeronaves de Mexico aircraft in Chihuahua, Mexico. C–83–5301 RHS involves the death of Othon Martinez. C–83–5429 RHS involves the deaths of Zully and Blanca Martinez.

All three decedents were killed in the crash of the Aeronaves de Mexico flight, which originated in Monterey, Mexico, and was on route to Tijuana, Mexico. Othon Martinez purchased his ticket in Campbell, California. Whereas this flight was part of Martinez's intended trip from San Jose, California to Monterey, Mexico and back to San Jose, Othon purchased separate tickets for the Mexican and United States portions of his flight. He flew round-trip on one ticket from San Jose to San Diego, on Pacific Southwest Airlines (PSA), then crossed the border to Tijuana, and flew on a separate round-trip ticket to and from Monterey, Mexico on Aeromexico. Zully and Blanca Martinez purchased their flight tickets in San Jose, California, and drove to Tijuana, from which they had round-trip tickets to and from Monterey, Mexico.

On March 16, 1984, this Court held: (a) a status conference; and (b) a hearing on defense motions to bar jury trial and for partial summary judgment.

### II. *Jury Trial and Appropriate Defendants*

Plaintiffs do not oppose the motions to bar jury trial, and the motions are hereby granted [see 28 U.S.C. § 1441(d)].

All Doe defendants are hereby dismissed from these actions [see *M.J. Brock & Sons, Inc. v. Davis*, 401 F.Supp. 354, 357 (N.D. Cal.1975)]. Plaintiffs agree that in C–83–5429 RHS, Aeronaves de Mexico should be made a defendant, in place of Aero-Mexicana, and that all defendants except Aeronaves de Mexico should be dismissed from C–83–5301 RHS.

### III. *C–83–5429 RHS Motion for Partial Summary Judgment*

By this motion, Aeronaves de Mexico seeks a ruling that its liability for compensatory damages is limited to 125,000 pesos per decedent. This limit is imposed by Mexican law. However, plaintiffs contend that the matter of compensatory damages is governed by California law, which places no limit on the amount of compensatory damages. The parties agree: (a) that the flight which crashed was a domestic Mexican flight; and (b) that this Court must apply the substantive law—California or Mexican—that a California state court would apply.

*Bernhard v. Harrah's Club*, 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719 (1976), articulates California's approach to resolving conflicts of law. Under this "comparative impairment" approach, a court seeks to determine which state's interest would be more impaired if its policy

were subordinated to the policy of the other state. Ordinarily, the forum will apply its own rule of decision unless a party litigant invokes the law of a foreign state. In that event, the burden is on the invoking party to demonstrate that the latter rule of decision will further the interest of the foreign state and thus is the appropriate rule to apply.

■ Aeronaves de Mexico carries on extensive activities in California. It operates regular flights to and from Los Angeles, maintains ticket offices and advertises in California, and sells tickets through California travel agencies. Decedents, who were California residents, purchased their tickets through a California travel agency. These contacts give California a definite interest in having its law applied, so that there must be some compelling reason to displace California law. Although Mexico has an interest in protecting its airlines from large damage awards which could affect the nation's economic strength, it does not appear that the Mexican economy would be imperiled by the application of California law in this case. Mexico has an obvious interest, not shared by California, in regulating conduct which takes place within its borders. However, California courts have distinguished sharply rules which regulate conduct from rules which limit damages in wrongful death cases. Rules regulating conduct are accorded more deference than rules limiting liability [see *Cable v. Sahara Tahoe Corp.*, 93 Cal. App.3d 384, 395, 155 Cal.Rptr. 770 (1979)]. In this action, Mexico's interest in limiting damages must be balanced against California's interest in securing proper and just compensation for the death of its residents, and in encouraging its residents' safety.

Since defendants have not shown Mexico's interests to be more compelling than California's in this action, the motion is hereby denied.

IV. *C–83–5301 RHS Motion for Partial Summary Judgment*

By this motion, Aeronaves de Mexico seeks a ruling: (a) that its liability for compensatory damages is limited to 125,-000 pesos; and (b) that it is not liable for punitive damages.

■ In this action, the plaintiff claims that Othon Martinez, was on an international flight, so that the Warsaw Convention damage limitation of $75,000 applies. Plaintiff's theory is that Martinez was killed on one part of an entire travel plan that originated from and was to return to the San Jose, California, airport. Martinez flew on Pacific Southwest Airlines from San Jose to San Diego, then crossed to Tijuana and flew to Monterey, Mexico, on Aeronaves de Mexico. He died on the flight back from Monterey to Tijuana. However, Martinez's flight back was not to be one continuous trip from Monterey to San Jose. The respective tickets for the United States and Mexican flights contained no reference to one another. Both parties must have regarded the transportation as a single operation in order for the Warsaw Convention to apply. The unilateral expectation of one party does not control the determination [see *P.T. Airfast Services, Indonesia v. Superior Court*, 139 Cal.App.3d 162, 165–170, 188 Cal.Rptr. 628 (1983)]. Therefore, the flight on which the crash occurred was a domestic Mexican flight, and the Warsaw Convention limitation does not apply.

However, plaintiff contends in the alternative that, if the flight on which Othon Martinez was killed was a domestic Mexican flight, the substantive law of California providing unlimited recovery of compensatory damages should apply in this case. Having found that the flight was a domestic Mexican flight, this Court finds that the same choice-of-law considerations employed above in C–83–5429 RHS apply also to this case. Therefore, because defendants have not shown Mexico's interests to be more compelling than California's in this action, the compensatory damages aspect of the motion is hereby denied.

With respect to punitive damages, there is again a true conflict. Mexican law does not permit recovery of punitive damages, unless there was illegal activity on defend-

**334**

ant's part. California law places no limitation on punitive damages.

 The purpose of punitive damages is the deterrence of wrongful acts through the penalizing of wrongdoers [see *Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 790, 157 Cal.Rptr. 392, 598 P.2d 45 (1979)]. Because any relevant wrongful acts would have been committed in Mexico by Mexican citizens employed by a Mexican corporation in connection with a domestic flight, Mexico has the overriding interest in any punishment of its own citizens [see *Franklin Supply Company v. Tolman*, 454 F.2d 1059, 1076 (9th Cir.1971)].

Therefore, the punitive damages aspect of the motion is hereby granted.

### V. *Status Conference*

A status conference in these actions is hereby scheduled for April 13, 1984.